IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
AMARILLO DIVISION



| | | |
|---|---|---|
| KAAREAM WASHINGTON,<br>TDCJ-CID No. 01644868,<br><br>Plaintiff,<br><br>v.<br><br>YOLANDA FLENORY, *et al.*,<br><br>Defendants. | §§§§§§§§§§§ | 2:19-CV-154-Z-BR |

## MEMORANDUM OPINION AND ORDER
## DISMISSING CIVIL RIGHTS COMPLAINT

Before the Court is Plaintiff's civil-rights Complaint brought under 42 U.S.C. § 1983("Complaint") (ECF No. 3), filed July 25, 2019. Plaintiff filed suit *pro se* while incarcerated in the Texas Department of Criminal Justice ("TDCJ"), Correctional Institutions Division. The Court granted permission to proceed *in forma pauperis*. ECF No. 6. For the reasons discussed herein, the Court **DISMISSES** Plaintiff's Complaint **WITH PREJUDICE**.

### FACTUAL BACKGROUND

Plaintiff alleges he was housed in the administrative segregation unit of the Bill Clements Unit of TDCJ at the time of filing this lawsuit. ECF No. 3 at 4. Plaintiff states Defendant Richerson — the TDCJ warden at Bill Clements — authorized a unit of "field force officers" to conduct searches of inmates housed in administrative segregation. *Id.* at 5. Plaintiff states Defendants Garcia and Herrera are both field force officers. *Id.* Plaintiff alleges that on June 19, 2019, he was instructed to strip down for a search by a correctional officer (not named as a Defendant). *Id.* Plaintiff alleges that while he was held in a hallway holding cell, Defendants Garcia and Herrera

searched his cell. *Id.* Plaintiff alleges that 52 magazines, 50 hardback books, and 600 photographs were seized during the search of his cell by Garcia and Herrera. *Id.* Plaintiff asserts this property was seized pursuant to TDCJ policy, but also alleges Defendants Garcia and Herrera "deliberately enter[ed] Plaintiff's housing area with the intention of taking Plaintiff's authorized property without due process of law." *Id.* at 6. Plaintiff claims his cell was left in "disarray" following the search. *Id.* Defendant Garcia explained the confiscated property was taken to Defendant Flenory's office. *Id.*

On June 24, 2019, Plaintiff sent an I-60 request to Defendant Flenory concerning the status of his seized property. *Id.* Plaintiff claims Defendant Flenory advised Plaintiff that Defendant Richerson instructed her not to return the property, and the property would be recycled. *Id.* Plaintiff further asserts Defendant Flenory "receive[d] Plaintiff's authorized property and failed to return his property so that she could use it for the gross enrichment of TDCJ illegally." *Id.* Plaintiff asserts the seizure violated his due-process rights. *Id.* Plaintiff also asserts the seizure was part of a conspiracy. *Id.* at 7.

On July 1, 2019, Defendant Eilers used a "controlled" use of force — involving the use of chemical agents — to secure his compliance with orders. *Id.* at 7–8. Plaintiff asserts that "eventually, Plaintiff surrendered due to the intense pain caused by the chemical agents and Plaintiff's severe lack of air." *Id.* at 8. Plaintiff was instructed on decontamination, and his property was seized following the use of force. *Id.* Plaintiff claims he was unable to decontaminate himself for two days following the use of chemicals. *Id.* Plaintiff claims he "has suffered severe psychological trauma . . . constant anxiety, sleeplessness, a burning sensation like the gas is still on his skin" ever since this incident. *Id.* Plaintiff challenges the deliberate denial of access to decontamination showers as a violation of his Eighth Amendment rights. *Id.* Plaintiff states

2

Defendant Richerson deliberately ignored his grievances filed in relation to this incident. *Id.* at 9.

In a separate claim, Plaintiff claims the Bill Clements Unit is understaffed, leading to improper denial of recreation time to inmates. *Id.* Plaintiff contends he has only received outside recreation 60 times in the last year. *Id.* at 10. Plaintiff further asserts that, during a two-month lockdown, Plaintiff was only allowed four recreation opportunities. *Id.* Plaintiff avers he has several mental disorders which are exacerbated by the failure to receive adequate recreation time outdoors. *Id.*

### LEGAL STANDARD

When a prisoner confined in any jail, prison, or other correctional facility brings an action with respect to prison conditions under any federal law, the Court may evaluate the complaint and dismiss it without service of process, *Ali v. Higgs*, 892 F.2d 438, 440 (5th Cir. 1990), if it is frivolous,[1] malicious, fails to state a claim upon which relief can be granted, or seeks monetary relief from a defendant who is immune from such relief. 28 U.S.C. §§ 1915A, 1915(e)(2). The same standards will support dismissal of a suit brought under any federal law by a prisoner confined in any jail, prison, or other correctional facility, where such suit concerns prison conditions. 42 U.S.C. § 1997e(c)(1). A *Spears* hearing need not be conducted for every *pro se* complaint. *Wilson v. Barrientos*, 926 F.2d 480, 483 n.4 (5th Cir. 1991).[2]

---

[1] A claim is frivolous if it lacks an arguable basis in law or in fact. *Booker v. Koonce*, 2 F.3d 114, 115 (5th Cir. 1993).

[2] *Green vs. McKaskle*, 788 F.2d 1116, 1120 (5th Cir. 1986) ("Of course, our discussion of *Spears* should not be interpreted to mean that all or even most prisoner claims require or deserve a *Spears* hearing. A district court should be able to dismiss as frivolous a significant number of prisoner suits on the complaint alone or the complaint together with the *Watson* questionnaire."). Dismissals may also be based on adequately identified or authenticated records. *Banuelos v. McFarland*, 41 F.3d 232, 234 (5th Cir. 1995).

ANALYSIS

The Due Process Clause of the Fourteenth Amendment provides that "[n]o State shall . . . deprive any person of life, liberty, or property, without due process of law." U.S. CONST. amend. XIV. To the extent Plaintiff sues Defendants in their official capacities, Eleventh Amendment immunity bars such claims, and those claims must be dismissed. *See Houston v. Zeller*, 91 F. App'x 956, 957 (5th Cir. 2004). To the extent that Plaintiff sues Defendants in their individual capacities, these claims are addressed herein.

Plaintiff first seizure of his personal property during a cell search violated his due-process rights. A due-process deprivation claim against persons acting under color of state law is cognizable in Section 1983 litigation under the Due Process Clause of the Fourteenth Amendment in certain situations. The *Parratt/Hudson* doctrine counsels that 'a deprivation of a constitutionally protected property interest caused by a state employee's random, unauthorized conduct does not give rise to a § 1983 procedural due process claim, unless the State fails to provide an adequate postdeprivation remedy.'" *Coomer v. Roth*, No. 21-10182, 2021 WL 4714607, at *2 (5th Cir. Oct. 8, 2021) (quoting *Allen v. Thomas*, 388 F.3d 147, 149 (5th Cir. 2004)). Even so, "[c]onduct is not 'random and unauthorized' for purposes of the *Parratt/Hudson* doctrine if the state 'delegated to [the defendants] the power and authority to effect the very deprivation complained of.'" *Allen*, 388 F.3d at 149 (alterations in original) (quoting *Zinermon v. Burch*, 494 U.S. 113, 138 (1990)). Thus, the doctrine does not apply where the property was "confiscated under the authority of a prison administrative directive" that is challenged by the plaintiff. *Id*. However, in *Allen*, the Fifth Circuit addressed the confiscation of property under the authority of a prison administrative directive, not the unauthorized act by a state employee. *Allen*, 388 F.3d at 149. The Fifth Circuit's holding in *Allen* is not at issue here. In that case, the plaintiff complained his typewriter and radio

4

were confiscated under authority of TDCJ Administrative Directive 03.72, which directive he claimed to be unconstitutionally vague and in violation of First Amendment free-speech protections. The Fifth Circuit held the undisputed facts revealed that Allen's property was confiscated under authority of a prison administrative directive and so the confiscation was not a random and unauthorized act — taking the case outside of the *Parratt/Hudson* Doctrine. The challenge there was to the validity of the administrative directive itself; not the allegedly unlawful actions of prison officials. Here, Plaintiff does not complain of the validity of the TDCJ regulations themselves. Plaintiff instead asserts Defendants acted in violation of these regulations to seize his "authorized" property for "gross enrichment." ECF No. 3 at 6. Thus, Plaintiff allegations that Defendants intentionally misused or misapplied a policy to wrongfully seize his authorized property does not assert a due process violation or challenge in light of *Allen*.

As a result, Plaintiff's claims fall within the *Parratt/Hudson* doctrine, meaning Defendants' actions do not violate procedural due process if the State furnishes an adequate postdeprivation remedy. *Caine v. Hardy*, 943 F.2d 1406, 1412 (5th Cir. 1991). The Texas administrative and judicial systems provide an adequate state postdeprivation remedy. TEX. GOV. CODE § 501.007; *see also Murphy v. Collins*, 26 F.3d 541, 543–44 (5th Cir. 1994). Consequently, the appropriate forum for Plaintiff's claims is in a state court or the administrative procedures of TDCJ–CID — not this Court. *Simmons v. Poppell*, 837 F.2d 1243, 1244 (5th Cir. 1987). Accordingly, the Court **DISMISSES** Plaintiff's claims against Defendants Garcia, Herrera, and Flenory as frivolous.

Plaintiff also alleges that, after chemical agents were used against him, he was deliberately denied decontamination procedures. ECF No. 3 at 7–8. Plaintiff does not challenge the application of chemical agents as excessive or needed to restore order or enforce discipline. Instead, Plaintiff

challenges Defendants' actions following the application of force which was used to "gain his compliance." *See id.* at 8.

Plaintiff alleges that, after he was sprayed with chemical agents, Defendants and medical staff ignored his distress and placed him back in the same cell and provided him instructions for decontamination. *Id.* Plaintiff avers his sink did not work, "which meant Defendant Eliers had instruct the Plaintiff's water to be turned off." *Id.* Plaintiff claims he went two days with no water and suffered "intense pain" from the burning from not being able to wash off the chemicals. *Id.*

"[D]eliberate indifference to serious medical needs of prisoners constitutes the unnecessary and wanton infliction of pain . . . proscribed by the Eighth Amendment, and this includes 'indifference . . . manifested by prison doctors in their response to the prisoner's needs or by prison guards in intentionally denying or delaying access to medical care or intentionally interfering with the treatment once prescribed.'" *Erickson v. Pardus*, 551 U.S. 89, 90 (2007) (quoting *Estelle v. Gamble*, 429 U.S. 97, 104–05 (1976)). "It is not, however, every injury . . . that translates into constitutional liability for prison officials responsible for the victim's safety." *Farmer v. Brennan*, 511 U.S. 825, 834 (1994). Instead, the standard to employ is whether prison officials were "deliberately indifferent" to the safety needs of an inmate. *Id.*; *see also Cantu v. Jones*, 293 F.3d 839, 844 (5th Cir. 2002). "[A] prison official cannot be found liable under the Eighth Amendment . . . unless the official knows of and disregards an excessive risk to inmate health or safety; . . . the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Farmer*, 511 U.S. at 837. Mere negligence on the part of prison officials is not enough. *Id.* at 835. The deliberate indifference standard permits courts to separate omissions that amount to an intentional choice from those that are merely unintentional oversights. *Southard v. Tex. Bd. of Crim. Just.*, 114 F.3d

6

539, 551 (5th Cir. 1997). A delay in medical care to a prisoner can constitute an Eighth Amendment violation only if there has been deliberate indifference, which results in substantial harm. *Mendoza v. Lynaugh*, 989 F.2d 191, 195 (5th Cir. 1993).

"While the Constitution does not require that custodial inmates be housed in comfortable prisons, the Eighth Amendment's prohibition against cruel and unusual punishment does require that prisoners be afforded 'humane conditions of confinement' and prison officials are to ensure that inmates receive adequate food, shelter, clothing, and medical care." *Herman v. Holiday*, 238 F.3d 660, 664 (5th Cir. 2001) (quoting *Farmer*, 511 U.S. at 837). To establish an Eighth Amendment violation, a prisoner must demonstrate that a prison official was deliberately indifferent to conditions that resulted in the "extreme deprivation" of "the minimal civilized measure of life's necessities." *Shannon v. Vannoy*, 682 F. App'x 283, 285 (5th Cir. 2017); *Hernandez v. Velasquez*, 522 F.3d 556, 560 (5th Cir. 2008).

Plaintiff does not plausibly plead: (1) an extreme deprivation of health or safety or (2) a substantial risk of serious harm. Specifically, Plaintiff acknowledges t the use of force was planned and a team of TDCJ officers applied chemical agents to his cell until he complied with orders. ECF No. 3 at 7–8. Additionally, because the use of force was planned, medical personnel were present at the scene. *Id.* Plaintiff alleges he has asthma and had difficulty breathing following the application of chemical agents, but does not allege he was suffering from an ongoing asthma attack at the time TDCJ personnel left him in his cell. *See id.* Plaintiff acknowledges Defendant Eilers informed him of decontamination procedures when he was placed back in his cell. *Id.*

The crux of Plaintiff's claim is that Defendant Eilers stated that, "That's the good stuff, hope you like it," following the use of force. *Id.* at 8. Plaintiff, when entering his cell, realized the water was not working in the sink for him to decontaminate. *Id.* Plaintiff then draws the inference

7

that Defendant Eilers ordered the water turned off in his cell as punishment. *Id.* Plaintiff makes no allegations that he requested medical aide following failed attempts to decontaminate himself that were denied or that any statements were made concerning the water in his cell or any actions taken by Defendant Eilers indicating he had the water turned off in the cell to disallow decontamination. *See id.* Plaintiff's Complaint fails to allege that Defendant Eilers had actual knowledge that the water in Plaintiff's cell was not working and, therefore, fails to state a deliberate-indifference claim. *Compare Gillette v. CoreCivic*, No. 3:18-CV-106-DAS, 2018 WL 5723946, at *2 (N.D. Miss. Nov. 1, 2018) ("The single use of pepper spray against another inmate, which caused Mr. Gillette difficulty breathing for a short time, does not constitute denial of a basic human need for an unreasonable amount of time."), *with Cardona v. Taylor*, 828 F. App'x 198, 202 (5th Cir. 2020) (officers ordered plaintiff back into his cell which was still filled with tear gas, refused to provide supplies for decontamination, denied him opportunity to visit medical department for treatment of injuries and exposure to tear gas, and declined to house him in cell free of tear gas) *and Hope v. Harris*, 861 F. App'x 571, 584 (5th Cir. 2021) (prisoner was exposed to pepper spray and tear gas in his cell "at least ten times through no fault of his own," his cell was not decontaminated, and on one occasion he was "left nude in a cell with the pepper spray still on his body [without anything] to clean it off with for eight days").

Plaintiff does not allege Defendant Eilers knew Plaintiff was exposed to any harm from a lack of decontamination following the application of chemical agents. In this respect, Plaintiff does not plausibly allege that Defendant Eilers knew of a substantial risk of serious harm. In fact, Plaintiff states, "when the Plaintiff went to his sink to try to [decontaminate] was [sic] the water did not work, which meant Defendant Eilers had instructed the Plaintiff's water to be turned off." ECF No. 3 at 8. Entirely conclusory allegations provide no factual basis whatever upon which the

8

Court might plausibly conclude that he has stated a claim for relief. Plaintiff's mere personal belief that Defendant Eilers ordered the water turned off simply because the water was not working following the explanation of decontamination procedures (where Plaintiff admits Defendant Eilers properly explained procedures and made no mention of any water deprivation) are conclusory and cannot support a claim. *Al-Ra'id v. Ingle*, 69 F.3d 28, 32 (5th Cir. 1995) (citing *Harlow v. Fitzgerald*, 457 U.S. 800, 817–18 (1982)). The Court thus **DISMISSES** Plaintiff's Complaint for failure to state a claim.

Plaintiff also brings claims concerning available recreation time allowed on his unit, averaging outdoor recreation time of approximately once per week. ECF No. 3 at 9–10. With respect to his claim that he was denied recreation outdoors, Plaintiff has not shown his allegations rise to the level of an Eighth Amendment violation. *See Wilkerson v. Maggio*, 703 F.2d 909, 911–12 (5th Cir. 1983). Plaintiff only alleges that his mental condition is affected by a lack of adequate outdoor exposure, and he does not allege he suffered a physical injury; he cannot recover damages absent such injury. *See* 42 U.S.C. § 1997e(e); *Hernandez v. Velasquez*, 522 F.3d 556, 561 (5th Cir. 2008). Additionally, Plaintiff has not requested injunctive relief. The Court therefore **DISMISSES** Plaintiff's recreation-related claims as frivolous.

CONCLUSION

For the reasons set forth above and pursuant to 28 U.S.C. §§ 1915A, 1915(e)(2) and 42 U.S.C. § 1997e(a), the Court **DISMISSES** Plaintiff's Complaint filed pursuant to 42 U.S.C. § 1983 **WITH PREJUDICE** as frivolous.

**SO ORDERED.**

August 26, 2022

---

MATTHEW J. KACSMARYK
UNITED STATES DISTRICT JUDGE